Good morning. May it please the Court, my name is Amy Gilbrow and I represent the plaintiff appellant Kathy Pfeil. In this Social Security case, we argue that the ALJ erred in its evidentiary findings on three main findings in the case. The ALJ found Mrs. Pfeil's work activity amounted to substantial gainful activity from January through May 2001 and therefore she was not eligible for benefits. He also found Mrs. Pfeil did not have an impairment that more than slightly impacted her ability to perform basic work activities. And he found that Mrs. Pfeil's testimony was only credible when it could be verified because she worked as a psychic or intuitive. In our briefs, we argue that each of these findings had... In the medical records, all we find is some commitments to send some notes from the doctors. We don't find any actual reports, is that right, that said she was disabled? I'm sorry, I don't understand your question. Some notes from the doctors? There were some notes in a couple of the records saying that, yes, the patient asked me to send a letter saying that I'm disabled and I'm happy to do so, but then there doesn't seem to be in the excerpts of record any report from the doctor. Is that accurate? It's accurate. Your question is, your statement is accurate in that there are no reports from the doctors indicating whether Mrs. Pfeil was disabled or was not disabled prior to the date last insured. However, the commissioner doesn't require a statement from a doctor that an individual is disabled in order to find a person disabled. And in particular... Can you get closer to the mic? We're not really hearing you. Sure. In particular, at step two of the sequential evaluation process, all that's required is that an individual has, first, has a medically determinable impairment. And in this case, the judge found that prior to March 30, 2001, Mrs. Pfeil had no medically determinable impairment other than her abdominal problems, which he found were sporadic rather than continuous over a 12-month period. And in our brief, what we explained is that the ALJ's step two rationale is not supported by substantial evidence. The judge found that... Well, he didn't say that she didn't have an impairment. He just said it was not severe. Well, his rationale for finding, the reason he found the claimant's impairment was not severe was that she did not, there was no record of a shoulder, back, or mental health problem prior to June 30, 2001, three months after her date last insured. That was the ALJ's reason for finding Mrs. Pfeil did not have a severe impairment. And as we pointed out in our opening briefs, and as the commissioner admits, the ALJ was wrong about that. There is medical evidence of record which establishes that Mrs. Pfeil had a shoulder, back, and so the ALJ's step two reason for finding Mrs. Pfeil's impairment was not severe is not supported by any evidence in the record, and the commissioner admits that. What the commissioner would like the court to do, then, is to go ahead and find that the evidence as a whole supports the ALJ's finding at step two. However, this court's jurisprudence does not allow you to do that. In Conant, in particular, cited in our briefs v. Barnhart, the court found that this court is constrained to review the administrative law judge's decisions on the basis he asserts in his decision, not on basis argued by the commissioner or by the district court. Counsel, why wouldn't that be harmless error if the date is wrong regarding the, when the back, shoulder, and mental complaints were first mentioned? Does that matter if the evidence in the record, nevertheless, does not support a finding of severe impairment at the applicable time? It's not harmless error because the judge didn't properly review the evidence, and this court doesn't know what the judge would do when reviewing that evidence. The judge's decision was wrong, and that the A fact was wrong. That. His view of the facts were wrong. The commissioner admits that. And if the ALJ's view of the facts was wrong, then I think the court, under Conant, needs to remand the case so that the judge can look at the facts, the correct facts. Do you have a case that says that if the ALJ has a date wrong, that that taints the decision such that it has to be remanded? No. The, I mean, there are cases that remand a judge's decision, a judge's incorrect decision at step two. Right. But, I mean, there always can be typos, misstatements, you know, at what point does it rise to the level that it has to be remanded, and at what point is it error that's harmless? That's what I'm trying to get you to define for me. Is every factual error reversible? With respect, I don't think that this particular statement by the judge is a typo. And the reason that I don't think it's a typo is that he indicated, similarly, her complaints of mental problems are first mentioned in June 2001. And let's say it's not a typo. It's just a mistake on the date. Instead of putting December or whatever the date was, he put June or April instead of June. But it's not a mistake in regard to the date, because the exhibits he cites to in pointing to June 2001 refer to that, to the June 2001 date. So he meant to say June 2001. He meant that she had not reported her impairments prior to June 2001. And he acknowledged that the relevant date in this case is March 31, 2001. So it was the ALJ's specific finding that she was required to establish disability of March 31, 2001. And in his view of the record, she did not complain of those impairments prior to June 2001. He cited to evidence in the record which said June 2001. And we've pointed out x-rays and complaints and physical findings prior to March 30, 2001. But he also found that she was not severely impaired such that it would prevent her from working and, in fact, cited specific evidence, her own testimony, about her engaging in her chosen profession for a substantial period of time while she was supposedly disabled. She was laying on a couch or something and getting psychic advice. And that's the judge's Step 1 finding, which we also argue was an error. The ALJ's How is it an error? Didn't she testify to that? In order to determine that an individual has engaged in substantial gainful activity at Step 1, the ALJ has to apply the steps in 20 CFR 1575, 404, 1575. There are three tests. And even the district court found that the judge had not properly applied those three tests here. So once Step 1, the ALJ takes care of Step 1, then he moves on to Step 2 to find if she has more than a minimal impairment. Even if an individual is able to perform some work activity, that doesn't necessarily mean if it's not SGA, the judge has to continue to Step 2 and determine whether that individual had more than a minimal impairment. Next, the ALJ then determines what the individual's residual functional capacity is and whether they can perform their past role. I understand the way the test works, but counsel, in this case, that was her chosen profession and she was engaging in it. But not without limitation. Not without limitation. So she was laying on a couch instead of sitting in a chair? She was laying on a couch. She was missing appointments. She was canceling appointments. She couldn't do some of her work anymore. She was only working at most 40 hours a month, 10 hours a week, because of her symptoms. And so those were all limitations she had in her ability to work. The judge can find that Ms. Feil is not disabled on remand, but because the actual findings that he was required to make are not supported by substantial evidence, he needs to do that properly on remand. The court cannot step in and make those findings for him. Counsel, do we have to, or the ALJ, consider the expenses she incurs in connection with her business as compared to what she earns? Is that a? Yes. The ALJ is required to consider her expenses. And in this case, the ALJ did not find that she did not have those expenses. He did not challenge the validity of the expenses, which means that Ms. Feil's net income in 2001 was $1,218. In order to find that she had engaged in SGA, she would have had to have a net income averaging $740 a month. There's no way that a judge can reach a conclusion that an individual has averaged $740 a month when her total net income for the year was $1,218. Counsel, you have 21 seconds left. Do you want to save some time for rebuttal? Yes, please. Thank you. Good morning, Your Honors. May it please the Court, my name is Matthew Pyle, and I represent the Commissioner of Social Security. I think there are three main things, three general facts that should be kept in mind as we analyze the specific issues in this case. One is that it is a very narrow period of review. March 1st, 2001 is her alleged date of onset, and March 31st, 2001 is her date last insured. So there's only a 31-day period in which she needs to establish disability. The second fact, Your Honors, is that Ms. Feil filed for benefits almost two years after that period expired. So developing the record would be difficult, any further would be difficult, two years after the fact. And the third fact that is important to remember is that she did earn or generate $54,000 in gross revenue during the year in which she said she became disabled. Now, with respect to substantial gainful activity, the ALJ did find that the claimant engaged in substantial gainful activity between the months of January 2001 and May 2001, and not for the entire year. That is important, Your Honors, because the ALJ did determine that during those five months, the claimant had over $7,000 in gross revenue during those five months. What formula did the ALJ use to determine the SGA? Well, the test that the ALJ used was Test 1. The Commissioner is not disputing that the ALJ did not apply a Test 2 or 3. So the first test is the only test the Commissioner contends is at issue here, and that is the significant services and substantial income test. Significant services is not at issue here because Mrs. Feil was a sole proprietor, and under the regulations, that means she was, by definition, performing significant services. So the only issue here is whether her accountable income for those five months was more than the substantial gainful activity amounts for 2001. Right, but accountable income is substantial if it averages more than the amounts described in 404.1574B2 or less than the amount described in 404.1574B2. So how did the ALJ apply those parts of the test? Your Honor, he did not do that specifically, and he probably should have. But I think we can read from his decision, which was pretty extensive on the substantial gainful activity point, that he found that her net income, her net accountable income, was more than the monthly substantial gainful activity amounts. How do we know? We know that because in January through May 2001, he said first that there was more than $7,000 per month in gross revenue, and we also know that the average expenses per month for all of 2001 were over $4,000. But when we subtract those expenses from the gross revenue, we end up with an amount that the ALJ found of over $3,000 per month. What expenses? There were expenses that are documented only in the income tax return, Your Honor, for 2001. And so he did give her full credit for all of the expenses by averaging over a 12-month period. Did he deduct the help from her daughter and her husband? We don't know that for sure, Your Honor. But what we do know is from her testimony, it appears that she was considering, in her expenses for the 2001 tax return, any amount she had to pay her daughter for the help there. Now, because the $3,200 or so per month from January through May 2001 was more than the $740 per month of substantial gainful activity levels, the ALJ's decision, though not perfectly worded or perfectly clear, was supported by substantial evidence and was sufficiently analyzed. I assume we don't agree with you. Could you move to Step 2? Absolutely. Your Honors are correct. There is no statement in the record that the establishes she had any limitations at all. And under the regulations, it is the claimant's duty to produce evidence of limitations. And that simply was not met here. The Commissioner doesn't dispute that there were impairments, but the Commissioner does dispute that there is any evidence that an ALJ could have relied on that was no severe impairments at all. And because there was no evidence of functional limitations, then there were no severe impairments that the ALJ could have found. With respect to abdominal difficulties, there were, granted there were, there was a long history of those abdominal complaints, but the ALJ did not err in the medical evidence supports its determination that those were sporadic complaints and that they perhaps flared up from time to time. But even as those, even as the, those complaints were occurring, there is no evidence in the record of any limitations associated with those complaints. And, in fact, I Can you respond, counsel, to opposing counsel's observation that the error in the date of onset taints the decision such that it needs to be remanded? I don't think it does, Your Honor. And for one main reason. First of all, it could have been a hypo, but even if it weren't, the evidence in the record does not support any limitations prior to that date anyway. Even if there were, even because there were, excuse me, there were mentions of those impairments before June 2001, but because there was no associated limitations with those, there is no error, there is no harmful error, even if there was error in how the ALJ worded his There is indication that she complained of shoulder complaints before June 2001. However, there are also other reports in the record that say that she had full passive range of motion of her shoulders, and later that although she had guarded range of motion, she still had full range of motion of her shoulders. And so, again, there is evidence in the record that she had no limitations. And, in fact, in five months after the date last insured, there is at least some medical evidence in the record that suggests she was using her shoulders to play golf. With respect to back injuries, there was evidence in the record, a mention in the record before June 2001 of back injuries, but the objective findings both before and after the date last insured only showed mild, mild degenerative changes with her back injuries. With respect to mental impairments, yes, there was a remote history of depression and anxiety that appears in evidence that was submitted to the Appeals Council. But, again, there were no associated limitations with these. And, in addition, many of the episodes of anxiety appeared to be arising situations that would cause anyone anxiety. For example, there were references in the record to having anxiety because of a medical procedure. There was another reference to having anxiety because of the recent death of her father. And then another reference because of anxiety due to the recent death of her mother. And so, although there are references to anxiety, again, there are no associated limitations with that, and they appear to be explained by the situation she was going through at the time. There are additional references to mental impairments after the date last insured, but, again, those would not be relevant here because she couldn't establish that she had limitations from those impairments before the date last insured expired. Your Honor, do you have any further questions for me? It appears not. Thank you, Your Honor. We would ask that the panel affirm the decision of the Commissioner. Thank you. Rebuttal. We'll give you one minute for rebuttal. I think that once the Commissioner admits, as they have today, that there were impairments, there's one important factor that the judge in this case didn't consider and that the Commissioner didn't just address in his argument. Which judge? The administrative law judge. Okay. The administrative law judge in this case indicated that he hadn't considered Ms. Files' credibility or her testimony. Once an individual establishes they have impairments, which the Commissioner has admitted, the testimony of the claimant must be considered in determining whether her impairments are severe under SSR 96-3P, which indicates that even if the objective medical evidence would not in itself establish that the impairments are severe, the judge needs to consider the individual's symptoms. And in this case, Ms. Files clearly testified that her symptoms caused significant limitations prior to March 30, 2001. And in this case, the judge determined to reject Ms. Files' testimony because his worldview was different than her worldview. He determined that there was no way she could believe in the powers that she professed, even though there was no evidence in the record which indicated that she didn't believe in those powers. And we request remand so that the judge can properly consider all of the evidence in this case and reach a decision. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Mowat v. Clark.
judges: Fletcher, Rawlinson, Ezra